**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**
**Case No. 2:26-cv-14096**

RUSLAN RUBIS,
An Individual,

       Plaintiff,

vs.

MOTORSPORTS OF STUART, LLC., d/b/a
TREASURE COAST HARLEY-DAVIDSON,
A Florida limited liability company,

       Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, RUSLAN RUBIS, an individual (hereinafter the "**Plaintiff**"), hereby sues Defendant, MOTORSPORTS OF STUART, LLC., d/b/a TREASURE COAST HARLEY-DAVIDSON, a Florida Limited Liability Company ("**Dealer** or **Dealership**"), and alleges:

### PARTIES

1. At all times material hereto, the Dealership was licensed by the State of Florida as a dealer conducting automobile sales in St. Lucie County, Florida.

2. At all times material hereto, the Dealership was a "dealer" as defined under 49 U.S.C. §32702(2) and Florida Statute § 320.77(1)(a) and a "transferor" as defined under 49 C.F.R. § 590.3.

3. At all times material hereto, Plaintiff was *sui juris* and a resident of St. Lucie County, Florida.

4. Plaintiff is a "transferee" as defined under 49 C.F.R. § 580.3.

### *Factual Allegations*

5.      On or about September 29, 2024, Plaintiff purchased a 2023 Harley Davidson FLHX (VIN: ending in 79621) ("Motorcycle") from the Dealership for personal and household use.

6.      Plaintiff was expressly informed by the Dealership that the Motorcycle was new.

7.      The dealership also advertised the Motorcycle as new.

8.      The Retail Installment Sale Contract ("RISC") executed on the date of purchase described the Motorcycle as "*NEW*." A true and correct copy of the RISC is attached hereto as Exhibit "A."

9.      The bill of sale ("Bill of Sale") executed on the date of purchase described the Motorcycle as "*New*." A true and correct copy of the Bill of Sale is attached hereto as Exhibit "B."

10.      Unbeknownst to Plaintiff at the time, and in direct contrast with what Plaintiff was told and advertised, the Motorcycle had been previously titled and had at least one prior owner predating his transaction.

11.      As part of his due diligence, the Plaintiff obtained a certified copy of the Motorcycle's title history following the purchase.

12.      The title history revealed that the Motorcycle was previously titled to another consumer on June 8, 2024.

13.      The Dealership failed to provide the certificate of title for examination and instead utilized alternate mileage disclosure forms in violation of 49 U.S.C. §32705 and 49 C.F.R. §580.5.

14.      The Dealership utilized this scheme and artifice to conceal the true title history and prior ownership, thereby misrepresenting the Motorcycle's condition and status.

15.      Plaintiff would not have purchased the Motorcycle or would have paid significantly less had he known the truth.

16.     At no time did the Dealership disclose that the Motorcycle was used as required under Florida law.

17.     Based on the representations and the non-disclosures of the Dealership, Plaintiff agreed to purchase the Motorcycle.

18.     As a result of the misrepresentations and omissions by the Dealership as further set forth herein, the Plaintiff has been damaged.

19.     At the time of sale, the purchase price charged to Plaintiff reflected the full retail market price of a new 2023 Harley Davidson FLHX, not the diminished value of a previously titled and used Motorcycle.

20.     As a direct and proximate result of the Dealership's misrepresentations and omissions, Plaintiff has suffered actual damages, including paying the full new-Motorcycle price for a Motorcycle that had already been previously titled and owned; the difference between the value of a truly new Motorcycle and the fair market value of the Motorcycle as a used Motorcycle on the date of sale; sales tax calculated on the inflated new-Motorcycle price, including tax on the price differential between a new and used Motorcycle; title, registration, and related governmental fees incurred in connection with a transaction structured and represented as a new Motorcycle sale; finance charges and interest under the RISC calculated on an inflated principal balance; diminished resale and trade-in value due to the prior title history; and loss of the benefit of the bargain, together with all other incidental and consequential damages permitted by law.

21.     The Bill of Sale is a pre-printed, standardized document.

22.     On the Bill of Sale, the Dealership charged Plaintiff a $1,497.00 "PREP" fee, a $425.00 charge for "DOCUMENT FEES" and a $1,500.50 charge for "OTHER CHARGES AND FEES" (collectively the "Pre-Delivery Service Fees"). *Id*.

23. The $1,497.00 "PREP" fee, the $425.00 charge for "DOCUMENT FEES" and the $1,500.50 charge for "OTHER CHARGES AND FEES" are pre-delivery service fees as contemplated by Fla. Stat. § 501.976(18).

24. The Dealership misrepresents Pre-Delivery Service Fees as state-mandated when they are not.

25. The Dealership charges and collects the Pre-Delivery Service Fees from all of its customers.

26. Florida's Deceptive and Unfair Trade Practice Act mandates that car dealers, like the Dealership, must include a statutory disclosure associated with the Pre-Delivery Service Fees as follows: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale." Fla. Stat. § 501.976(18) ("FDUTPA Disclosure").

27. The Pre-Delivery Service Fees are costs and profits to the Dealership for preparing and submitting tag, title, and registration documents.

28. The Bill of Sale failed to contain the FDUTPA Disclosure associated with the Pre-Delivery Service Fees.

29. Plaintiff could not have avoided paying the Pre-Delivery Service Fees because of the non-disclosure and the manner in which the Dealership misrepresented the fees.

30. Plaintiff did not know the Pre-Delivery Service Fees were not state mandated fees.

31. The Dealership knows it cannot charge or collect the Pre-Delivery Service Fees from consumers unless the fees are fully and properly disclosed.

32. A reasonable person in the Plaintiff's shoes would believe the Pre-Delivery Service Fees were state mandated pass-through charges, but in reality the Dealership retains a large portion

of the fees as profit.

33. The Dealership deceptively labels the Pre-Delivery Service Fees to appear as if the same were state mandated fees to purloin additional profit.

34. This allows the Dealership to reap an illegitimate profit at the expense of consumers.

35. The Pre-Delivery Service Fees are pre-delivery fees because the Dealership charges the fees before delivering the Motorcycle to the consumer.

36. In all of its sales, the Dealership uses the same Bill of Sale agreement like the Plaintiff's or a Bill of Sale in substantially the same form as the Plaintiff.

37. On November 14, 2025, Plaintiff delivered a pre-suit demand letter pursuant to Fla. Stat. 501.98 to Defendant. Despite more than thirty (30) days elapsing, a response was not received from the Defendant.

38. Defendant also defaulted on its arbitration agreement by failing to pay arbitration filing fees.

### COUNT I
### ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT
**(Dealership)**

39. This is an action for violation of the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* (hereinafter the "**Act**").

40. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 38 above as if set forth hereat in full.

41. At all times material hereto, Plaintiff was a "transferee" as said term is defined 49 C.F.R. §580.30.

42. At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

43.     At all times material hereto, the Motorcycle was a "motor Motorcycle" as said term is defined under 49 U.S.C. §32101(7).

44.     Dealership failed to provide Plaintiff with the actual title certificate for the Motorcycle, for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

45.     The title certificate was not lost or stolen and in the process of being replaced at the time of the Plaintiff's transaction.

46.     The title certificate was not held by a lender at the time of the Plaintiff's transaction.

47.     The title certificate was in the Defendant's possession at the time of the Plaintiff's transaction.

48.     Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign a motor vehicle dealer title reassignment supplement, and an application for certificate of title which concealed the fact that the Motorcycle was a used motor Motorcycle.

49.     The sole means by which the Dealership disclosed the Motorcycle's mileage was through the Transfer Forms.

50.     Through the above-described scheme and artifice, the Dealership was able to bypass the requirements of the Act to intentionally conceal the Motorcycle's history.

51.     The Dealership designed and employed this tactic of requesting Plaintiff to sign the Transfer Forms instead completing the mileage disclosure on the title certificate as required by the Act with the specific intent of perpetuating fraud and deception on Plaintiff.

52.     The Dealership intentionally manipulated title procedures both to mislead Plaintiff and to serve its own ends, to-wit: the sale of a used Motorcycle for vastly more than it was worth.

53.     As an experienced dealer, the Dealership knew or should have known of the Act, and the regulatory requirements regarding disclosures and deliberately and recklessly disregarded

what the law required.

54.     The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

55.     The Dealership has violated the Act in that the Dealership failed to disclose the mileage to the Plaintiff in writing on the title certificate in violation 49 C.F.R. § 580.5(c).

56.     The Dealership violated the Act with the specific intent to defraud through concealment and omission.

57.     As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times his actual damages or $10,000.00, whichever is greater.

58.     Plaintiff has retained the undersigned counsel to represent his interest herein and are obligated to pay said counsel a reasonable fee for its services.

59.     Pursuant to 49 U.S.C. §32710(b), Plaintiff is entitled to recover his reasonable attorneys' fees and court costs upon entry of judgment in their favor.

## COUNT II
## REVOCATION OF ACCEPTANCE
### (Dealership)

60.     This is a claim for revocation of acceptance pursuant to the Warranty Act.

61.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 38 above as if set forth hereat in full.

62.     Plaintiff accepted the Motorcycle without discovering the above-described defects because Plaintiff was reasonably induced to accept the Motorcycle based on Dealer's misrepresentations and omissions along with the difficulty of discovering the above facts.

63.     Dealer refused and continues to refuse to correct the nonconformities present in the Motorcycle.

64.     The nonconformities substantially impair the value and use of the Motorcycle to

the Plaintiff.

65.     Plaintiff notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

66.     Despite receipt of Plaintiff's notices, Dealer failed to respond or otherwise resolve the Plaintiff's dispute.

**COUNT III**
**DEFENDANT'S VIOLATION OF**
**THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**PRE DELIVERY SERVICE FEES**
**(DEALERSHIP)**

67.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 38 above as if set forth hereat in full.

68.     Courts must construe FDUTPA liberally to protect consumers and businesses from unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202.

69.     The FDUTPA creates a private right of action for FDUTPA violations. Id. § 501.211.

70.     The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against a consumer. Id. § 501.204(1).

71.     The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. Id. § 501.203(7).

72.     The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value,

wherever situated." Id. § 501.203(8).

73.     Where there is a violation of a statute prohibiting unfair or deceptive acts, a per se violation of Florida's FDUTPA has also occurred. See Fla. Stat. § 501.203(3).

74.     FDUTPA states a car dealer commits an unfair and deceptive act when it

[C]harge[s] a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: "This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting Motorcycles, and preparing documents related to the sale."

Fla. Stat. § 501.976(18).

75.     Plaintiff is a "consumer" as defined under Fla. Stat. § 501.203(7).

76.     Plaintiff is also a "customer" as defined under Fla. Stat. § 501.975(1).

77.     Defendant is a "dealer" as defined under Fla. Stat. § 501.976(2).

78.     Defendant engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) when it sold motorcycles to Plaintiff.

79.     Defendant generally violated FDUTPA under § 501.204 when it engaged in unfair and deceptive practices in trade or commerce by failing to properly disclose the Pre-Delivery Service Fees charged to Plaintiff.

Defendant also committed a per se violation of FDUTPA when it failed to include the FDUTPA required disclosure associated with the Pre-Delivery Service Fees when it sold a motorcycle to Plaintiff and the other Class members. Fla. Stat. § 501.976(18).

80.     As a result of Defendant's FDUTPA violations, Plaintiff suffered out-of-pocket monetary loss by paying for illegal fees.

81.     Plaintiff is an aggrieved party by virtue of the Defendant's FDUTPA violations as set forth hereinabove.

**COUNT IV**
**DEFENDANT'S VIOLATION OF**
**THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**SALE OF USED MOTORCYCLE AS NEW**
**(DEALERSHIP)**

82.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 38 above as if set forth hereat in full.

83.     Courts must construe FDUTPA liberally to protect consumers and businesses from unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202.

84.     The FDUTPA creates a private right of action for FDUTPA violations. Id. § 501.211.

85.     The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices in the conduct of any trade or commerce" against a consumer. Id. § 501.204(1).

86.     The FDUTPA defines "consumer" broadly as an individual, entity, or any group or combination. Id. § 501.203(7).

87.     The FDUTPA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Id. § 501.203(8).

88.     Where there is a violation of a statute prohibiting unfair or deceptive acts, a per se violation of Florida's FDUTPA has also occurred. See Fla. Stat. § 501.203(3).

89.     FDUTPA provides that a dealership commits an unfair or deceptive act when it engages in conduct prohibited by other statutes designed to protect consumers, and a violation of such statutes constitutes a per se violation of FDUTPA. See Fla. Stat. § 501.203(3).

90.     In this case, the Dealership's conduct, as alleged herein, constitutes unfair and deceptive acts and practices, including but not limited to the following:

   a.  The Dealership violated Fla. Stat. § 320.60(12) by representing and selling the Motorcycle as "new" when the equitable and/or legal title had previously been transferred to an ultimate purchaser and a Florida title had been issued, thereby disqualifying the Motorcycle from "new motor vehicle" status under Florida law; further, to the extent the Dealership contends the Motorcycle could be resold as "new" following a prior delivery, the Dealership failed to provide the required written notice—"THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER"—and failed to obtain Plaintiff's signed acknowledgment for its file as mandated by the statute.

   b.  The Dealership violated Fla. Stat. § 501.976(3) by representing the previous usage and status of the Motorcycle to be "new" and not previously owned, when that representation was false and not supported by accurate information regarding the Motorcycle's title history.

   c.  The Dealership violated Fla. Stat. § 501.976(4) by representing the Motorcycle's condition and status as a new Motorcycle—thereby implying a particular quality of care, lack of prior use, and condition—without such representations being true or supportable by material fact.

   d. The Dealership violated Fla. Stat. § 501.976(7) by making express or implied affirmations concerning the Motorcycle, including representations regarding its mileage and status, and failing to honor those affirmations.

   e. The Dealership violated Fla. Stat. § 501.976(9) by obtaining Plaintiff's signatures on contracts and closing documents that were not fully and accurately completed at the time of execution and/or that did not accurately reflect the true nature of the transaction, including the Motorcycle's prior title status and ownership history.

   f. The Dealership violated 49 U.S.C. § 32705 and 49 C.F.R. § 580.5, with intent to defraud, by failing to provide the actual certificate of title for Plaintiff's examination and signature at the time of transfer and instead utilizing alternate mileage disclosure documentation in order to conceal the Motorcycle's prior ownership history.

91. Plaintiff is an aggrieved party by virtue of the Defendant's FDUTPA violations as set forth hereinabove.

**WHEREFORE**, Plaintiff, RUSLAN RUBIS, demands judgment against Defendants, MOTORSPORTS OF STUART, LLC., d/b/a TREASURE COAST HARLEY-DAVIDSON, a Florida limited liability company, for:

   (a) actual damages under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211(2) together with declaratory and injunctive relief, Fla. Stat. § 501.211(1);

(b) statutory damages pursuant to the Federal Odometer Act, 49 U.S.C. § 32710(a), in an amount equal to three (3) times Plaintiff's actual damages or $10,000.00, whichever is greater;

(c) revocation of acceptance of the Motorcycle and all attendant relief available under law, including rescission of the transaction, incidental and consequential damages, return of all monies paid, cancellation of the retail installment sales contract, and such other equitable relief as the Court deems just and proper;

(d) reasonable attorneys' fees and taxable costs pursuant to 49 U.S.C. § 32710(b) and Fla. Stat. § 501.2105;

(e) pre-judgment and post-judgment interest as allowed by law; and

(f) such further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, RUSLAN RUBIS, an individual, demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Joshua E. Feygin

JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email:  Josh@JFeyginesq.com
**SUE YOUR DEALER – A LAW FIRM**
4601 Sheridan Street
Suite 205
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*

# EXHIBIT A

# ◢LAW 553-FL-ARB-eps 1/24

## RETAIL INSTALLMENT SALE CONTRACT -- SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| RUSLAN RUBIS ███████████ | N/A <br><br> Co-Buyer's Birth Month: N/A <br> Cell: <br> Email: | Treasure Coast Harley-Davidson <br> 4967 SE Federal Hwy, US 1 <br> Stuart FL 34997 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of ___3.990___ % per year. The Truth-In-Lending Disclosures below are part of this contract.
You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/ Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2023 | Harley-Dav   FLHX | | ██████████9621 | Personal, family, or household unless otherwise indicated below <br> ☐ business <br> ☐ agricultural   ☐ _____N/A_____ |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE <br> The cost of your credit as a yearly rate. | FINANCE CHARGE <br> The dollar amount the credit will cost you. | Amount Financed <br> The amount of credit provided to you or on your behalf. | Total of Payments <br> The amount you will have paid after you have made all payments as scheduled. | Total Sale Price <br> The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 3.990 % | $ 2,045.33 | $ 19,530.07 | $ 21,575.40 | $ 21,575.40 |

**Your Payment Schedule Will Be:**      (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 359.59 | Monthly beginning 10/29/2024 |
| N/A | N/A | N/A |

Or As Follows:

N/A

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of ___5___ % of each installment.

**Prepayment.** If you pay early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

**WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

Returned Payment Charge: If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

Florida documentary stamp tax required by law in the amount of $ 68.60 _____ has been paid or will be paid directly to the Department of Revenue.
Certificate of Registration No. _____.

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 1,123.65 sales tax)     $ 19,292.32 (1)

2 Total Downpayment =

| | | |
|---|---|---|
| Gross Trade-In Allowance | $ | 0.00 |
| Less Pay Off Made By Seller (e) | $ | 0.00 |
| Equals Net Trade In | $ | 0.00 |
| + Cash | $ | 0.00 |
| + Other N/A | $ | 0.00 |
| + Other N/A | $ | 0.00 |

(If total downpayment is negative, enter "0" and see 5J below)    $ 0.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2)    $ 19,292.32 (3)

4 Predelivery Service Fees

| | | |
|---|---|---|
| A Predelivery Service Charge | $ | 0.00 |
| B Electronic Registration Filing Fee | $ | 0.00 |
| C N/A | $ | 0.00 |

These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Total Predelivery Service Fees    $ 0.00 (4)

5 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.

| | | | |
|---|---|---|---|
| Life | $ | N/A | |
| Disability | $ | N/A | $ 0.00 |
| B Vendor's Single Interest Insurance Paid to Insurance Company | | | $ 0.00 |
| C Other Optional Insurance Paid to Insurance Company or Companies | | | $ 0.00 |
| D Optional Gap Contract | | | $ 0.00 |
| E Official Fees Paid to Government Agencies | | | $ 0.00 |
| F Government Documentary Stamp Taxes | | | $ 68.60 |
| G Government Taxes Not Included in Cash Price | | | $ 0.00 |
| H Government License and/or Registration Fees | | | |
|    License and Registration Fees | | | $ 138.65 |
| I Government Certificate of Title Fees | | | $ 27.00 |

J Other Charges (Seller must identify who is paid and describe purpose)

| to | for | |
|---|---|---|
| N/A | for Prior Credit or Lease Balance (e) | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| State of FL | for Battery/Tire Fee | $ 3.50 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |
| N/A | for N/A | $ 0.00 |

Total Other Charges and Amounts Paid to Others on Your Behalf    $ 237.75 (5)

6 Loan Processing Fee Paid to Seller (Prepaid Finance Charge)    $ 0.00 (6)

7 Amount Financed (3 plus 4 plus 5)    $ 19,530.07 (7)

8 Principal Balance (6+7)    $ 19,530.07 (8)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____, Year N/A . SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 5D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.    N/A

Name of Gap Contract

I want to buy a gap contract.

Buyer Signs **X** N/A

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs **X** _____     Co-Buyer Signs **X** N/A

Buyer Signs X    E-SIGNED RUSLAN RUBIS on 2024-05-10 11:54:25 GMT    Co-Buyer Signs X N/A

---

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**OPTIONAL SERVICE CONTRACTS**

You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**REJECTION OR REVOCATION**

If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**SERVICING AND COLLECTION CONTACTS**

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

**APPLICABLE LAW**

Federal law and the law of the state of Florida apply to this contract.

**NEGATIVE CREDIT REPORT NOTICE**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:
### Optional Credit Insurance

☐ Credit Life:        ☐ Buyer        ☐ Co-Buyer        ☐ Both        ☐ Credit Disability:        ☐ Buyer        ☐ Co-Buyer        ☐ Both

Term __N/A__                                                              Term __N/A__

Premium: Credit Life $ __N/A__                                           Credit Disability $ __N/A__

Insurance Company Name __N/A__                                          Home Office Address __N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 5A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

**X** __N/A__                               __N/A__          **X** __N/A__                               __N/A__
Buyer                                       Date            Co-Buyer                                   Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

**X** __N/A__                               __N/A__          **X** __N/A__                               __N/A__
Buyer                                       Date            Co-Buyer                                   Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

**X** __N/A__                               __N/A__          **X** __N/A__                               __N/A__
Buyer                                       Date            Co-Buyer                                   Date

### Other Optional Insurance

☐ __N/A__                                    __N/A__         Premium $ __N/A__
    Type of Insurance                        Term
Insurance Company Name & Address
                  __N/A__

☐ __N/A__                                    __N/A__         Premium $ __N/A__
    Type of Insurance                        Term
Insurance Company Name & Address
                  __N/A__

☐ __N/A__                                    __N/A__         Premium $ __N/A__
    Type of Insurance                        Term
Insurance Company Name & Address
                  __N/A__

☐ __N/A__                                    __N/A__         Premium $ __N/A__
    Type of Insurance                        Term
Insurance Company Name & Address
                  __N/A__

☐ __N/A__                                    __N/A__         Premium $ __N/A__
    Type of Insurance                        Term
Insurance Company Name & Address

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

**X** __N/A__                               __N/A__          **X** __N/A__                               __N/A__
Buyer Signature                             Date            Co-Buyer Signature                         Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** __N/A__ and is also shown in item 5B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer Signs **X** __N/A__                        Co-Buyer Signs **X** __N/A__                        Date: __N/A__

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose as the law allows.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e. You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see 2.d.) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.

If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

### 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**

You give us a security interest in:

- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:

- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

E-SIGNED by RUSLAN RUBIS
on 2024-09-10 11:54:45 GMT

Buyer Signs X _____   Co-Buyer Signs X _____ N/A _____

| Trade-In Vehicle | Trade-In Vehicle |
|---|---|
| Year N/A  Make N/A | Year N/A  Make N/A |
| Model N/A | Model N/A |
| VIN N/A | VIN N/A |
| Gross Trade-In Allowance $ N/A | Gross Trade-In Allowance $ N/A |
| Payoff Made by Seller $ N/A                           (e) | Payoff Made by Seller $ N/A                           (e) |
| Lienholder N/A | Lienholder N/A |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or required any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials R.R.    Co-Buyer Initials N/A

Trade-In Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the trade-in payoff amount shown above and in Item 2 of the Itemization of Amount Financed as the Pay Off Made by Seller. You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown above and in Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" below, any assignee of this contract will not be obligated to pay the Pay Off Made by Seller shown above and in Item 2 or any refund.

Buyer Signature X _____ N/A _____    Co-Buyer Signature X _____ N/A _____

---

SELLER'S RIGHT TO CANCEL - If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section below, which gives the Seller the right to cancel if Seller is unable to assign this contract within _____ N/A _____ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ _____ N/A _____ per day from the date of cancellation until the vehicle is returned or repossessed.

X _____ N/A _____    X _____ N/A _____
**Buyer Signs**    **Co-Buyer Signs**

---

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on page 1 of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated above to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.

b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. If Seller has already sold the Trade-in, the Seller will pay you the proceeds of the sale less any reasonable expenses incurred in connection with holding, preparing, reconditioning and selling the Trade-in and any prior credit or lease balance paid by Seller to a prior lienholder or lessor on your behalf.

d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision above for each day you do not return the vehicle after receipt of the notice of cancellation.

e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those above) remain in effect even after you no longer have possession of the vehicle.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

Buyer Signs X  E-SIGNED RUSLAN RUBIS
on 2024-0?-?0 11:?5:13 GMT    Co-Buyer Signs X _____ N/A _____    LAW 553-FL-ARB-eps 1/24 v1    Page 5 of 6

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs **X** _E-SIGNED ☑ RUSLAN RUBIS on 2024-0?? 11:45:04 GMT_ Co-Buyer Signs **X** N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements.**

**NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs **X** _E-SIGNED ☑ RUSLAN RUBIS on 2024-0?? 11:66:12 GMT_ Date 09/29/24 Co-Buyer Signs **X** N/A Date N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** N/A Address N/A

Seller Signs Treasure Coast Harley-Davidson Date 09/29/24 By **X** Title

---

Seller assigns its interest in this contract to EAGLEMARK SAVINGS BANK (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller Treasure Coast Harley-Davidson By Title

---

**LAW** FORM NO. 553-FL-ARB-eps (REV. 1/24)
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

187122

*LAW 553-FL-ARB-eps 1/24 v1*   Page 6 of 6

# EXHIBIT B



**TREASURE COAST HARLEY-DAVIDSON**

4967 SE FEDERAL HIGHWAY
STUART, FL 34997
Tel: (772) 287-3871
Fax: (772) 283-9717

## MOTORCYCLE BILL OF SALE

### BUYER INFORMATION

Buyer: RUSLAN RUBIS

Address: ████████████████

| Phone: ████████ | Lic#: |
|---|---|

CoBuyer:

| Deal #: 50113 | Retail | Purchase Date: 09/29/24 |
|---|---|---|

Salesperson: FELIPE SALAS

### DESCRIPTION OF PURCHASE

| | | Make: | Model: |
|---|---|---|---|
| New | Year: 2023 | Harley-Davidson | FLHX |

| VIN: ████9621 | Ref Number: 679621 |
|---|---|

| Color: Redline Red | Mileage: 20 |
|---|---|

Lienholder: EAGLEMARK SAVINGS BANK
P.O. BOX 277940
SACRAMENTO, CA 95827

### OTHER CHARGES AND FEES

| | |
|---|---|
| FREIGHT | $1,497.00 |
| SHOP SUPPLIES | $0.00 |
| CVR | $0.00 |
| TIRE FEE | $2.00 |
| BATTERY | $1.50 |
| | |
| | |
| Other Charges and Fees Total | $1,500.50 |

### SETTLEMENT

| | |
|---|---|
| SELLING PRICE | $14,749.67 |
| PREP | $1,497.00 |
| Subtotal | $16,246.67 |
| EXTENDED SERVICE CONTRACT | $0.00 |
| DOCUMENT FEES | $425.00 |
| REGISTRATION FEES | $165.65 |
| OTHER CHARGES AND FEES | $1,500.50 |
| Total Selling Price | $18,337.82 |
| TRADE ALLOWANCE | $0.00 |
| TRADE PAYOFF | $0.00 |
| DEPOSITS | $0.00 |
| CASH DOWN | |
| TOTAL TAXES | $1,123.65 |
| Doc Stamps | $68.60 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Balance Due | $19,530.07 |

| TRADE VIN | MAKE | MODEL | YEAR | COLOR | MILEAGE | PAYOFF |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Buyer Signature: _E-SIGNED by RUSLAN RUBIS on 2024-0██30 11:28 42 GMT_

Dealer Signature: _E-SIGNED by NISK SHERET on 2024-0██29 21 01:13 GMT_

CoBuyer Signature: _____

These charges represent costs and profits to the seller/dealer for such items such as preparation of documents, overnight mailing fees, affidavits, notary services, tag (if applicable), and all other handling services connected with the sale, financing, licensing, and titling of the vehicle. Waste tire Fee(s) at $2.00 per tire and Lead-Acid Battery Fee(s) at $1.50 per battery, if applicable, are included in the selling price of this motor vehicle (Florida Law).

The Buyer has the option to purchase the described vehicle for the purchase price and the terms set forth above and as set forth hereinafter. Buyer understands this option shall not be binding on Seller until signed and accepted by a manager of the seller. Buyer agrees to pay any increase in price by manufacturer in the event the vehicle must be special ordered and further agrees that neither the Seller nor the manufacturer will be held liable for failure to affect delivery. Buyer agrees the described vehicle offered in trade to be free from any and all security interests, liens, claims or and other encumbrances of any kind.

In consideration for the price paid here fore, Seller agrees to hold said vehicle from other sale until after the date recorded below in the space provided. Seller further agrees to apply sum paid for this option to the vehicle purchase price should Buyer exercise this option. It is further understood by Buyer and Seller that upon exercise of this option, title to such vehicle will be transferred to Buyer in accordance with sale contingent upon clearance and collection of any and all negotiable instruments tendered in settlement by Buyer. Any such negotiable instrument dishonored shall render exercised contract to be breached. Title to the said vehicle shall remain or revert to seller and any goods or money paid to Seller shall be retained as liquidated damages for Buyer's failure to fulfill the exercise terms of this option purchase agreement.

Buyer and Seller understand and agree the exercise of this purchase option agreement to be payment by Buyer to Seller on or before delivery date recorded below the full amount of the cash delivery price or equivalent subject to the aforementioned conditions and the delivery and acceptance of the said vehicle to and by the Buyer. Buyer and Seller understand and agree that this purchase option agreement, if exercised, is the only contract controlling the purchase and sale of said vehicle and this option shall contain all agreements whether express or implied, verbal or written.

As an alternate to the above means of exercising this option, Buyer and Seller may exercise a retail installment contract subject to acceptance of such contract by a lending institution acceptable to Seller and payment in cash or equivalent, subject to the aforementioned conditioned conditions, any and all cash down payment required under such retail installment sales contract and delivery to and acceptance of the said vehicle by Buyer. Seller agrees to refund to Buyer monies on deposit of this option only if Buyer is unacceptable to such lending institutions for the credit amount requested. Buyer, herewith, if applicable, authorizes Seller and said lending institutions to secure any and all information from any sources to determine credit worthiness of Buyer.

PLEASE READ FULLY BEFORE SIGNING

In the event that it become necessary for the Seller to enforce any provisions of the purchase contract or to enforce any right or remedy hereunder or in the event it becomes necessary for the Seller to defend any action arising out of the purchase contract regardless of whether such action is instituted by the Buyer or a third party, the Buyer agrees to pay all reasonable attorney's fees, costs, or expenses incurred by the seller or any judgment against the Seller resulting from any of the aforementioned events.

Buyer and dealer agree that all claims, demands or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale or financing of the motorcycle, the terms and provisions of the sale or financing arrangements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products as incident to the sale or financing of the motorcycle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale or financing shall be settled by BINDING ARBITRATION. In addition, by signing below I WAIVE MY RIGHT TO TRIAL BY JURY OR CLASS REPRESENTATION. This purchase option is not fully executed until all truth in lending disclosures have been made.

If this is a consignment sale, the motorcycle owner has final say as to accept or deny any offers or deposits. Buyer agrees that should Seller issue Buyer a refund check for all deposits then that is the limit of Sellers liability and buyer shall be entitled to no other claims.

WARRANTIES DISCLAIMER

Seller makes no warranty of any kind, express or implied, as to the merchantability or fitness for a particular purpose of the vehicle covered by this agreement, and Buyer understands and agrees that such vehicle, whether new or used, is sold "as is" and "with all faults", except as specifically included in this program and by reference made a part hereof.

BUYER AGREES THAT HE HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS AND LIMITATIONS OF LIABILITY SET FORTH HEREIN AND AFFIXES HIS SIGNITURE IN CONFIRMATION OF HIS OFFER.

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

Date _09/29/2024_____

Buyer's Name__RUSLAN RUBIS_____

Buyer's Signature__ E-SIGNED by RUSLAN RUBIS on 2024-09-29 17:03:21 GMT _____

Co-Buyer's Name_____

Co-Buyer's Signature_____

Treasure Coast Harley-Davidson Representative(s)__ E-SIGNED by NICK SHERET on 2024-09-29 21:05:56 GMT __

I understand no verbal agreement will be honored by Seller. An officer or manager of the company must accept deal. I have received a copy of purchase option contract on delivery.