**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 26-CV-14096-MIDDLEBROOKS

RUSLAN RUBIS,
an individual,

      Plaintiff,

v.

MOTORSPORTS OF STUART, LLC., d/b/a
TREASURE COAST HARLEY-DAVIDSON,
a Florida limited liability company,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AGAINST MOTORSPORTS OF STUART, LLC.

THIS CAUSE comes before the Court upon Plaintiff Ruslan Rubis's Motion for Default Final Judgment, filed pursuant to Federal Rule of Civil Procedure 55(b)(2) and this Court's Paperless Order Regarding Default Judgment Procedures (DE 8). (DE 12). Having reviewed the Motion, the Complaint (DE 1) and its exhibits, the Declaration of Ruslan Rubis filed in support of the Motion, the record, and applicable law, I will grant the Motion.

### PROCEDURAL BACKGROUND

Plaintiff commenced this action on March 20, 2026, alleging that Defendant Motorsports of Stuart, LLC., d/b/a Treasure Coast Harley-Davidson sold him a previously-titled 2023 Harley-Davidson FLHX motorcycle while representing it as new, and that Defendant concealed the prior title by withholding the certificate of title from his examination and substituting alternate transfer forms. (DE 1). The Complaint asserts four counts: (I) violation of the Federal Odometer Act, 49 U.S.C. §§ 32701 *et seq.*; (II) revocation of acceptance; (III) violation of the Florida Deceptive and

Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"), based on undisclosed pre-delivery service fees; and (IV) FDUTPA, based on the sale of a used motorcycle as new. Plaintiff elects monetary, declaratory, and injunctive remedies and does not pursue Count II.

Defendant was served on March 25, 2026, through delivery to an employee of Defendant's registered agent in compliance with Fla. Stat. § 48.062(1) (DE 5). Defendant, however, has failed to appear, answer, or otherwise defend within the time required. Accordingly, Plaintiff moved for Clerk's entry of default on April 27, 2026 (DE 6), and the Clerk entered default against Defendant on April 28, 2026 (DE 7).

## FACTS

On September 29, 2024, Plaintiff purchased a 2023 Harley-Davidson FLHX motorcycle, VIN ending in 79621 (the "Motorcycle"), from the Dealership for his personal and household use. (DE 1 at ¶ 5, DE 10-1 at ¶ 3). The Dealership represented the Motorcycle as new, both orally and through its advertising, and the written Retail Installment Sale Contract and Bill of Sale executed in connection with the sale both identified the Motorcycle as "New." (DE 1 at ¶¶ 6–9, DE 10-1 at ¶ 4). Contrary to those representations, the Motorcycle had been previously titled to another consumer on June 8, 2024, more than three months before Plaintiff's purchase. (DE 1 at ¶¶ 10, 12, DE 10-1 at ¶ 8). The Dealership did not disclose the prior title to Plaintiff before or during the sale. (DE 1 at ¶¶ 10–12, 16, DE 10-1 at ¶ 8).

At the time of sale, the certificate of title to the Motorcycle was in the Dealership's possession. The title was not lost, was not held by a lender, and was not in the process of being replaced. (DE 1 at ¶¶ 45–47). Rather than provide that certificate of title for Plaintiff's examination and signature, the Dealership instead had Plaintiff sign alternate transfer forms—namely, a motor vehicle dealer title reassignment supplement and an application for certificate of title—which did

2

not disclose, and operated to conceal, the fact that the Motorcycle had been previously titled. (*Id.* at ¶¶ 13, 48). As an experienced motor vehicle dealer, the Dealership knew that the certificate of title disclosed the prior ownership and knew or should have known that the prior title status was material to Plaintiff's purchasing decision. (*Id.* at ¶¶ 51–56).

On the Bill of Sale, the Dealership charged Plaintiff three pre-delivery fees: a $1,497.00 "PREP" fee, a $425.00 "DOCUMENT FEES" charge, and a $1,500.50 "OTHER CHARGES AND FEES" charge, totaling $3,422.50 (the "Pre-Delivery Service Fees"). (*Id.* at ¶¶ 22–23, DE 10-1 at; ¶¶ 5–6). Each is a charge for pre-delivery service within the meaning of Fla. Stat. § 501.976(18). (DE 1 at ¶¶ 23, 27, 35). The Bill of Sale did not contain the statutory disclosure required by § 501.976(18). (*Id.* at ¶¶ 26–28). Plaintiff paid the full $3,422.50; the amount was financed under the Retail Installment Sale Contract, and Plaintiff has paid those sums to the lender as part of his monthly payments. (*Id.* at ¶¶ 22–23, DE 10-1 at ¶ 7).

On November 14, 2025, Plaintiff served a pre-suit demand letter on Defendant pursuant to Fla. Stat. § 501.98. More than thirty days elapsed without response. (DE 1 at ¶ 37).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). *DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (*citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank*,515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a court must ensure that there is a sufficient basis in the pleadings for the judgment to be entered. *Id*. A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. *Id.*

## DISCUSSION

### i.  *Count I: Federal Odometer Act*

The Federal Odometer Act requires that the transferor of a motor vehicle disclose the vehicle's mileage on the certificate of title at the time of transfer, and that the transferee sign that disclosure. 49 U.S.C. § 32705(a); 49 C.F.R. § 580.5(c). Section 32710(a) creates a private right of action against any person who violates the Act or its implementing regulations with intent to defraud, and the Eleventh Circuit's decision in *Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005), is instructive on the application of these provisions.

In *Owens*, the consumer purchased a used vehicle that had been previously owned by a car rental company. *Id.* at 1320. Rather than make the mileage disclosure on the certificate of title itself, the dealer used a separate odometer disclosure statement. *Id.* The Eleventh Circuit held that

4

this practice violated § 32705 and was committed with the intent to defraud, because the use of a separate disclosure form, instead of the title document Congress designated as the exclusive vehicle for the disclosure, operated to conceal facts material to the consumer's purchasing decision, including the vehicle's prior ownership history. *Id.* at 1324–25. The court emphasized that the title-disclosure requirement was designed not only to ensure mileage accuracy, but also to enable consumers to "examine the titles for alterations, erasures or other marks" and to "learn the names of previous owners that appear on the title." *Id.* at 1325. The Eleventh Circuit thus recognized that the fraud cognizable under the Act "may relate to matters other than the vehicle's mileage," including a vehicle's prior ownership history. *Id.*

The facts here are materially indistinguishable from *Owens*. The Dealership possessed the certificate of title to the Motorcycle. (DE 1 at ¶¶ 45–47). Rather than provide that title to Plaintiff for his examination and signature, the Dealership had Plaintiff sign alternate transfer forms that did not disclose the prior ownership history. (*Id.* at ¶¶ 13, 48). The Dealership knew the Motorcycle had been previously titled and knew or should have known that fact was material to Plaintiff's purchasing decision. (*Id.* at ¶¶ 51–56). I therefore conclude that the allegations of the complaint support Plaintiff's claim that the Dealership violated 49 U.S.C. § 32705 and 49 C.F.R. § 580.5 with intent to defraud, within the meaning of 49 U.S.C. § 32710(a) and *Owens* by failing to complete the mileage disclosures on the title and producing the same for examination by Mr. Rubis.

Section 32710(a) entitles a successful plaintiff to recover "3 times the actual damages or $10,000, whichever is greater." 49 U.S.C. § 32710(a). The $10,000 statutory minimum is a congressionally-fixed amount that operates without regard to actual loss and is presumed once a

5

violation is established. Plaintiff is accordingly entitled to recover $10,000.00 in statutory damages on Count I.

### ii.      *Count III: FDUTPA — Pre-Delivery Service Fees*

FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A *per se* violation of FDUTPA occurs where the conduct violates any law, statute, rule, regulation, or ordinance that itself proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices. *Id.* § 501.203(3)(c).

Florida's motor vehicle dealer statute, Fla. Stat. § 501.976(18), declares it "an unfair or deceptive act or practice, actionable under [FDUTPA], for a dealer to . . . [c]harge a customer for any predelivery service without having printed on all documents that include a line item for predelivery service the following disclosure: 'This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.'" A dealer that charges any pre-delivery service fee without printing the required disclosure commits a *per se* violation of FDUTPA as a matter of law.

The Dealership charged Plaintiff $3,422.50 in Pre-Delivery Service Fees on the Bill of Sale without printing the disclosure required by § 501.976(18). (DE 1 at ¶¶ 22–23, 26–28). Therefore, on these facts, the Dealership committed a *per se* violation of FDUTPA in connection with the sale of the Motorcycle to Plaintiff.

FDUTPA permits a consumer who has suffered a loss as a result of a violation to recover actual damages. Fla. Stat. § 501.211(2). Where a seller unlawfully collects fees that it had no statutory authority to charge, the consumer's out-of-pocket payment of those fees constitutes actual damages under FDUTPA. *See Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d

DCA 2000) (holding that a cruise line's practice of billing passengers for "port charges" while retaining a portion for itself, rather than passing the charges through to the relevant port authorities, was deceptive under FDUTPA, and that reliance and damages were sufficiently shown by the fact that the passenger "parted with money for what should have been a 'pass-through' port charge"). Here, a dealership bills a consumer for pre-delivery service fees that the dealership has no statutory authority to charge absent the disclosure mandated by Fla. Stat. § 501.976(18), and the consumer parts with money for charges that should never have been imposed.

Plaintiff paid the full $3,422.50 in Pre-Delivery Service Fees as part of the financed transaction. Rubis Decl. ¶ 7. He is accordingly entitled to recover $3,422.50 in actual damages on Count III.

### iii.    *Count IV: FDUTPA — Sale of Used Motorcycle as New*

Section 501.211(1) of FDUTPA provides that "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." To obtain declaratory or injunctive relief under § 501.211(1), a plaintiff need not demonstrate an ongoing practice, irreparable harm, or a likelihood of future harm. The term "aggrieved" is broader than having suffered actual damages, and may include anyone who feels "angry or sad on grounds of perceived unfair treatment." *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 171–72 (Fla. 1st DCA 2015). Plaintiff attests that he feels "angry and treated unfairly" by the Dealership's conduct in representing and selling the Motorcycle to him as "new" when it had in fact been previously titled, and in concealing the prior title by having him sign alternate transfer forms rather than the actual certificate of title.

(DE 10-1 at ¶ 10). The Court accordingly finds that Plaintiff is an aggrieved party within the meaning of § 501.211(1).

The well-pleaded allegations of the Complaint, deemed admitted by virtue of default, establish multiple *per se* violations of FDUTPA arising from the Dealership's sale of the previously-titled Motorcycle as new. The Dealership violated Fla. Stat. § 320.60(12) by representing and selling the Motorcycle as "new" after equitable and legal title had been transferred to another consumer and a Florida title had been issued, without providing the written notice ("THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER") or obtaining the consumer's signed acknowledgment required where a previously-delivered vehicle is resold as new. (DE 1 at ¶ 90(a)). The Dealership violated Fla. Stat. § 501.976(3) and (4) by representing the Motorcycle's previous usage, status, and condition as new and not previously owned, when those representations were false and unsupported by accurate title-history information. Compl. ¶ 90(b)–(c). The Dealership violated Fla. Stat. § 501.976(7) by making express and implied affirmations concerning the Motorcycle's status, including its mileage and history, that it failed to honor. (*Id.* at ¶ 90(d)). The Dealership violated Fla. Stat. § 501.976(9) by obtaining Plaintiff's signatures on contracts and closing documents that did not accurately reflect the true nature of the transaction. (*Id.* at ¶ 90(e)). And, as discussed above in connection with Count I, the Dealership violated 49 U.S.C. § 32705 and 49 C.F.R. § 580.5 by failing to provide the certificate of title for Plaintiff's examination and signature and instead utilizing alternate mileage disclosure documentation to conceal the prior ownership history. (*Id.* at 90(f)). Each of these statutory violations is a *per se* violation of FDUTPA under § 501.203(3)(c). *Williams*, 916 F. Supp. 2d at 1300.

The Court therefore concludes that Plaintiff is entitled to declaratory relief that these practices violate FDUTPA, and to a permanent injunction restraining the Dealership from continuing them.

### iv.  *Attorneys' Fees, Costs, and Post-Judgment Interest*

Plaintiff is the prevailing party on Counts I, III, and IV. An award of reasonable attorneys' fees and costs is *mandatory* under the Federal Odometer Act, which provides that "[t]he court *shall award* costs and a reasonable attorney's fee to the person when a judgment is entered for that person." 49 U.S.C. § 32710(b) (emphasis added). FDUTPA likewise entitles the prevailing consumer to an award of attorneys' fees and costs. Fla. Stat. § 501.2105. The amounts of those awards will be determined upon timely motion by Plaintiff pursuant to Local Rule 7.3. Plaintiff is also entitled to post-judgment interest on the monetary portion of this judgment pursuant to 28 U.S.C. § 1961.

### JUDGMENT

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Default Final Judgment (DE 12) is **GRANTED**.

2.  Count II of the Complaint is **DISMISSED** as abandoned.

3.  Final judgment will be entered by separate order.

**SIGNED** in Chambers at West Palm Beach, Florida, this 12th day of June, 2026.

Donald M. Middlebrooks
United States District Judge

cc.  Counsel of Record

9